IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 1:20CR208-1 |
| | : | |
| ALEXANDER HILLEL TREISMAN | : | |

**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

COMES NOW, the Defendant, by and through his counsel, and respectfully moves this Honorable Court for an Order suppressing all evidence illegal seized in violation of the Defendant's Fourth Amendment Rights, under the United States Constitution, and all the fruits resulting from these violations. The Defendant believes that a hearing and witness testimony will be necessary. In support of this motion, the Defendant shows the Court as follows:

**STATEMENT OF FACTS**

On May 28, 2020, Officers from the Kannapolis Police Department (hereinafter, "KPD") conducted illegal searches of the Alexander Treisman' s Ford van.

At Approximately 10:50 a.m. on May 28, 2020, Crystal Wright, a bank manager at the Fifth-Third Bank in Kannapolis North Carolina, reported that an older white SUV on the ATM side of the bank had been there for three days and that a white Ford van, with expired plate from California had been there since 4:00p.m. the previous day. The van had been parked in the parking lot of the Fifth Third bank in Kannapolis, North Carolina. The van was parked in a designated parking space and was not blocking the ingress or egress of traffic, placing the public health at risk, jeopardizing nor placing public safety at risk of harm, nor otherwise posing a risk to the welfare of the general public. The Fifth Third Bank parking lot does not have signs indicating that the parking is for customers or that if a vehicle is left over-night it will be towed.

1

Officer Wagner and Officer Lambert of the KPD were directed to the Fifth Third bank regarding the SUV and the van. Upon inspection of the van, Officer Lambert noticed a rifle behind the driver's seat, ammunition, and other items in the front of the van. The front doors of the van were locked. Officer Lambert attempted to open the van's doors and discovered that the right-side rear door was unlocked. Officer Lambert, without consent of the owner, probable cause, or even reasonable suspicion, opened the van's door, then entered the vehicle and looked around. Immediately prior to Officer Lambert opening the side door of the van, Officer Wagner draws his firearm, and has it at the ready. Leaving the rear side van doors open, Officer Wagner makes a telephone call to his supervisor, Sergeant Lafferty. While this is going on, Officer Lambert manipulates one of the items located in the back of the van and determines that it is "heavy".

To further **investigate** the contents of the van, after their first illegal entry and search, KPD Officer's knowing that the do not have probable cause or any other legitimate means to search the van, decide to request permission from Crystal Wright, the bank manager, to tow the vehicle. Without Ms. Wright's "Authorization" to have the vehicle towed, KPD would lose their only chance to continue their exploration of the van. KPD's "Inventory" search the Defendant's van was a ruse and with the knowledge Ms. Wright's authorization was invalid. The KPD knowingly and intentionally conducted an illegal search of the Defendant's van, and to conceal their conduct, made a concerted effort to fit their illegal actions into an exception to the warrant requirement. Despite their best efforts to conceal their illegal acts, the warrant exception attempted to use in giving themselves a pass on violating the Defendant's Fourth Amendment rights is also violated and thus does not apply. The officers allege that their conduct is excused due to their response to a request that the van be towed from private property, Fifth Third Bank,

and that they only conducted an inventory search, but even if this is true, their actions violated the Kannapolis City code and KPD's own standard operating procedure. Officers from the KPD violated the Defendant's Fourth Amendment rights when they entered his van without a warrant. The defendant would request that all items seized, and any subsequent statements made by the Defendant be suppressed together with fruits of the KPD's violations of his constitutional rights.

### A. WARRANTLESS ENTRY AND SEARCH OF DEFENDANT'S VAN IS THE FIRST CONSTITUTIONAL VIOLATION COMMITTED BY THE KPD

Officers from the Kannapolis Police department violated the Defendant's Fourth Amendment rights when they opened then entered the right rear side door of the defendants his van without a warrant.

The Fourth Amendment of the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Generally, the Fourth Amendment requires police to obtain a warrant before conducting a search. Maryland v. Dyson, 527 U.S. 465, 466, 119 S. Ct. 2013, 144 L. Ed. 2d 442 (1999).

On May 28, 2020, Kannapolis Police Department officers, without a warrant, opened the side doors of the defendant's van and searched it. This initial illegal entry and search of the van constituted the KPD's first constitutional violation. Officers did not have an objectively reasonable belief that an emergency existed that required immediate entry to render assistance or prevent harm to persons or property within van and Officer Wagner had his firearm at the ready when the door was opened. The United States Supreme Court has continuously held searches conducted outside the judicial process, without prior approval by judge or magistrate are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and

3

well-delineated exceptions." Mincey v. Arizona, 437 U.S. 385, 390, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978) (internal quotation marks removed). When the KPD officers opened the van door and looked around, without having a search warrant, they violated the Defendant's fourth amendment rights.

### B. KPD'S FORMULATION OF A WARRANT EXCEPTION

Having realized that the first entry was illegal, KPD officers devised a scheme to justify their actions and to allow them to conduct a further investigation. Without probable cause to seek a warrant, Officers need an exception to the Warrant requirement. For the officers to continue to look through the van, they would need to justify a reason to tow it. Because if they were able to tow the van, they would be allowed to do an inventory search per their SOP.

### C. THE KPD WAS NEVER AUTHORIZED TO TOW THE DEFENDANT' VAN BECAUSE THE KPD WAS NOT AUTHORIZED TO TOW VEHICLES FROM PRIVATE PROPERTY

The parking lot of the Fifth-third bank in Kannapolis is not a public street, highway or on city owned property, as such, it is defined as private property. Both the Municipal code of Kannapolis (Hereinafter "Code") and the Kannapolis Police Department Standard Operating Procedures (Hereinafter "KPD SOP") outline the procedures for towing vehicles from private property. Under the Code, it is the city zoning administrator, not the KPD who were authorized to administer the removal of the Defendant's vehicle from private property.[1] The Code in Section 10-242 outlines the city's police regarding removing vehicles from private property.

////

---

[1] Kannapolis Municipal Code section 10-231.

The code states:

> " As a general policy, the city will not remove a vehicle from private property if the owner, occupant or lessee of such property could have the vehicle removed under applicable state law procedures. **In no case will a vehicle be removed by the city from private property without a written request by the owner, occupant, or lessee, except in those cases where a vehicle is a nuisance vehicle or is a junked motor vehicle which has been ordered removed by the city zoning administrator."** (emphasis added).

The Code goes on to outline the city zoning administrator's requirements that need to be fulfilled before a vehicle can be ordered removed from private property.[2]

Under the Code, KPD are only authorized to remove "abandoned vehicles from public streets and highways and on city owned property.[3] The KPD SOP identifies circumstances where an officer may order a vehicle towed.[4] Under KPD SOP General Order 900-02A:

Neither a request from an individual nor removal of an abandoned car from private property are listed as circumstances authorizing an officer to tow a vehicle from private property.[5] The KPD would not be able under North Carolina General Statute (Hereinafter "NCGS") section 20-137.9 to remove the vehicle either as the vehicle would not have met the statutory definition of an abandoned vehicle under North Carolina State Law.

////

////

////

////

---

[2] *See Generally* Kannapolis municipal code Article 5 Section 10-231 *et seq.*
[3] Kannapolis Municipal Code Section 10-231.
[4] Kannapolis Police Department Standard Operating procedure GENERAL ORDER 900-02
[5] Id.

5

KPD SOP General Order 900-02 lists when an officer may have a vehicle towed or impounded. That section states:

> A. CIRCUMSTANCES WHERE AN OFFICER MAY ORDER A VEHICLE TOWED
> 1. A police officer may order the towing/impoundment of a vehicle in accordance with the provisions of this Order under any of the following circumstances.
> (a) When a vehicle is upon any bridge, overpass or other elevated structure or within any tunnel or other underpass structure, where such vehicle constitutes an obstruction to traffic;
> (b) When a vehicle upon a street is so disabled as to constitute an obstruction to traffic and the person in charge of the vehicle is by reason of physical injury incapacitated to such an extent as to be unable to provide for its custody or removal;
> (c) When any vehicle is parked upon a street and is so parked illegally as to constitute a definite hazard or obstruction to the normal movement of traffic;
> (d) When a vehicle is parked upon a street continuously for more than forty-eight (48) hours and proper notice has been given by affixing Form KPD-117 (Notice For Towing) to the windshield or other conspicuous place indicating that failure to remove the vehicle within 48-hours of the time and date indicated on the notice may result in the vehicle being towed and stored for safe keeping at the owner's expense;
> (e) When the driver of a vehicle is taken into custody by a law enforcement officer and such vehicle would thereby be left unattended upon the street;
> (f) When any vehicle is parked on a street to be used for a procession, assemblage, or parade;
> (g) When removal is necessary in the interest of public safety because of fire, flood, storm or other emergency;
> (h) When any vehicle constitutes an "abandoned" vehicle as defined in this Order and is located on a public street or highway, or on property owned or operated by the City;
> (i) When any vehicle has been lawfully seized pursuant to a search warrant or a court order;
> (j) When any vehicle has been lawfully seized without a warrant and the vehicle is subject to forfeiture under state or federal law;
> (k) When any vehicle has been lawfully seized without a warrant and probable cause exists to believe that the vehicle contains or constitutes evidence of a crime and exigent circumstances exist.

The KPD SOP goes on in section 900-02 F.1.(b) to state "The City Zoning Administrator is responsible for the removal and disposition of "nuisance, Junked and abandoned" vehicles located on <u>private</u> property." (*underlined in original*). The KPD being unable to order the towing

6

Case 1:20-cr-00208-UA   Document 36   Filed 01/13/21   Page 6 of 10

of the vehicle themselves because of the prohibitions placed on them by their own SOP, the Code and North Carolina State law sought another avenue. That avenue was to have the bank Manger sign a tow and attempt to circumvent the KPD SOP, the Code state law and ultimately the Defendant's constitutional rights.

   D. **THE TOW REQUEST BY THE BANK MANAGER DID NOT GIVE KPD THE AUTHORITY TO TOW THE VEHICLE AND SHOWS KPD'S INTENT TO FURTHER SEARCH THE VAN FOR EVIDENCE.**

The KPD Officers, knowing they did not have authority to remove the vehicle under their own SOP, the Code and North Carolina State law, attempted to circumvent their lack authority by having Crystal Wright, the Bank Manager authorize the towing.[6] KPD officers had Crystal Wright sign a form entitled Kannapolis Police department Property owner tow request. The form states in relevant part that "in accordance with N.C. General Statutes 20-137.9;20-162;20-219.2; or 20-219.3 KPD is given authority to remove the defendant's vehicle from the Fifth-Third parking lot. Not one of the NC General Statutes cited on this request form gives or transfers authority from the bank official to authorize the removal of the defendant's property. If the purpose of the tow request were not to conduct further investigation under the guise of an inventory search, the KPD officers would have followed the Municipal code and their own SOP. Both the code and the SOP instruct an Officer to direct the bank manager to call the City zoning administrator. In addition, had the officers just directed the bank manager to call the tow truck herself. However, if either of those options were used, KPD officers would have been deprived their chance to further search the van.

////

E. **THE "INVENTORY" SEARCH WAS OF THE DEFENDANTS VAN WAS INVAID BECAUSE THE KPD DID NOT HAVE LAWFUL CUSTODY OF THE VAN**

The search conducted by KPD officers under the guise of an inventory search was invalid and thus a second violation of the defendant's constitution rights. While inventory searches constitute a well-established exception to the warrant requirement of the fourth amendment. *Illinois v. Lafayette*, 462 U.S. 640, 643, 77 L. Ed. 2d 65, 103 S. Ct. 2605 (1983). For an inventory search to be valid, the vehicle searched should first be in the valid custody of the law enforcement officers conducting the inventory. *South Dakota v. Opperman*, 428 U.S. 364, 374, 49 L. Ed. 2d 1000, 96 S. Ct. 3092 (1976). As discussed supra, the defendant's vehicle was not impounded or otherwise in lawful police custody. The KPD cannot call the second search of the defendant's vehicle an "inventory search." The second search of the defendant's van was done without a warrant or pursuant to a legitimate exception to the warrant requirement and thus unconstitutional.

**WHEREFORE**, the defendant respectfully moves this Honorable Court for and Order suppressing any items of evidence that were obtained in violation of the defendant's Constitutional Rights and all the fruits thereof.

Respectfully submitted, this the 13th day of January 2021

By: /s/ Samuel J. Randall, IV
SAMUEL J. RANDALL, IV
RANDALL & STUMP, PLLC
NC State Bar#: 25486
2125 Southend Drive
Suite 253
Charlotte, NC 28203
Telephone: (980) 237-4579
Facsimile: (980) 209-0029
Email: Sam@RandallStump.Com
Counsel for the Defendant

CERTIFICATE OF SERIVCE

The Undersigned herby certifies that a copy of the Defendant's Motion to Suppress was served upon counsel for the government via the CM/ECF system.

>GRAHAM T. GREEN
>Assistant United States Attorney
>NCSB #22082
>United States Attorney's Office
>Middle District of North Carolina
>251 North Main Street
>Winston Salem, NC 27101
>Phone: 336/333-5351
>
>CRAIG M. PRINCIPE
>Assistant United States Attorney
>NCSB #44720
>United States Attorney's Office
>Middle District of North Carolina
>251 N. Main Street, Suite 726
>Winston-Salem, NC 27101
>336/333-5351

This the 13th day of January 20201.

>By: /s/ Samuel J. Randall, IV
>SAMUEL J. RANDALL, IV

10